UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARRY RIVERA,

                     Plaintiff,

-against-

SUPERINTENDENT CONNOLLY, et al.,

                     Defendants.

**MEMORANDUM OPINION AND ORDER**

18-CV-03958 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Harry Rivera ("Plaintiff"), proceeding under 42 U.S.C. § 1983, alleged that a number of New York State Department of Corrections and Community Supervision ("DOCCS") employees violated his constitutional rights during his incarceration at Fishkill Correctional Facility ("Fishkill") in April and May 2015. (*See* Doc. 16). On August 6, 2019, Judge Briccetti—before whom this matter proceeded before its reassignment to this Court on March 17, 2020—issued an Opinion and Order dismissing all but one claim. (Doc. 24).[1] The sole claim that proceeded into discovery was an Eighth Amendment excessive force claim against Correction Officer Andrew Judge ("Defendant"). (*Id*. at 1). Discovery concluded on January 11, 2021. (Doc. 58).

      Pending presently before the Court is Defendant's motion for summary judgment. Defendant's moving papers were served on October 22, 2021. (Doc. 84; Doc. 85, "Def. Br."; Doc. 86, "56.1 Stmt."; Doc. 87, "Shevlin Decl."). Plaintiff's opposition papers were served on December 3, 2021 (Doc. 88, "Pl. Br."; Doc. 89, "Levine Decl."), and the motion was briefed fully with service of Defendant's reply brief on December 17, 2021 (Doc. 90).

      For the reasons set forth below, Defendant's motion is GRANTED.

---

[1] Judge Briccetti's prior decision is available on commercial databases. *See Rivera v. Connolly*, No. 18-CV-03958, 2019 WL 3564559 (S.D.N.Y. Aug. 6, 2019).

## BACKGROUND

The undisputed material facts stem from the pleadings, the 56.1 Statement of Material Facts, and the Declarations of Neil Shevlin and Alan Levine with their attachments.[2]

Plaintiff was incarcerated at Fishkill on May 6, 2015. (56.1 Stmt. at 3 ¶ 1; *see also* Shevlin Decl., Ex. A ¶¶ 2-4; *id.*, Ex. B ¶¶ 2-4; *id.*, Ex. E at 51:16-19, 58:5-10).[3] Defendant was employed by DOCCS at Fishkill on that date. (56.1 Stmt. at 3 ¶ 2; *see also* Shevlin Decl., Ex. A ¶ 2). At some point that day, an unidentified person slashed Plaintiff's face with an unknown weapon. (56.1 Stmt. at 4 ¶ 4; *see also* Shevlin Decl., Ex. E at 58:5-59:16, 61:4-8). Plaintiff made his way to the bathroom in Housing Unit A-East after the attack to examine and treat the wound. (56.1 Stmt. at 4 ¶ 5; *see also* Shevlin Decl., Ex. B ¶¶ 3-4; *id.*, Ex. E at 61:23-63:22). Around this same time, Defendant responded to a radio call directing him to that same bathroom in Housing Unit A-East. (56.1 Stmt. at 3 ¶ 3; *see also* Shevlin Decl., Ex. A ¶ 3).

The stories diverge at this point.

Defendant says that Plaintiff exited the bathroom without incident, was escorted to the infirmary, and complained only about the cut to his cheek. (56.1 Stmt. at 4 ¶¶ 6-7 ¶¶ 9-10; *see* Shevlin Decl., Ex. A ¶¶ 9, 10; *id.*, Ex. C ¶¶ 2-8; *id.*, Ex. D ¶¶ 2-8; *id.*, Ex. E at 81:10-20, 83:6-20).

Plaintiff remembers the events differently.

As Plaintiff tells the story, DOCCS employees told him to leave the bathroom—and he

---

[2] The Court cites Defendant's version of the 56.1 Statement of Material Facts because that filing includes: (1) Defendant's statement of facts (two pages); (2) Plaintiff's response to Defendant's statement of facts with Plaintiff's statement of additional facts (three pages); and (3) Defendant's responses to Plaintiff's statement of additional facts (two pages). (*See* 56.1 Stmt.). Plaintiff's version does not provide Defendant's responses to Plaintiff's statement of additional facts. (Levin Decl., Ex. B). Citations to the 56.1 Statement of Material Facts note both the corresponding page and paragraph.

[3] Five separate documents are annexed to defense counsel's declaration, but only one—a transcript—is identified as an "exhibit" thereto. (*See* Shevlin Decl. ¶¶ 2-3). The other attachments have no such designation. For ease of reference, citations to the items attached to defense counsel's declaration identify each attachment as a sequential exhibit (i.e., Ex. A, Ex. B, and so forth).

tried to do so—but Defendant stopped him. (56.1 Stmt. at 6 ¶ 9; *see also* Shevlin Decl., Ex. E at 68:4-19, 71:2-75:25). Plaintiff testified, in pertinent part, as follows:

> A. [Defendant] didn't push me from behind. He pushed me from the front back to the bathroom.
>
> Q. Where did he put his hands on you?
>
> A. On my chest.
>
> Q. So as you were trying to exit the bathroom?
>
> A. Because at first, I'm trying to get the attention, the sergeant's attention, and he's like - - he told me to wait or something.
>
> Q. Who's telling you to wait?
>
> A. [Defendant]. I'm trying to get the sergeant's attention and . . . he pushes me back into the bathroom.
>
> . . . .
>
> Q. What, if anything, did he say to you before he pushed you?
>
> A. He said, wait until they finish. I don't know what they were doing, but he said, wait until they're finished. I said listen, I'm trying to tell him, to get his attention to tell him something, and he pushes me, he pushes me again. That's when I fell.
>
> Q. He pushed you twice?
>
> A. He pushed me twice.

(Shevlin Decl., Ex. E at 71:18-73:16). Plaintiff insists that, because of the second push, he fell and hit his lower back on a partition dividing toilet stalls. (56.1 Stmt. at 7 ¶ 10; *see also* Shevlin Decl. Ex. E at 74:5-23, 76:5-15).[4] Plaintiff stood on his own after the fall and "scream[ed]" at Defendant. (Shevlin Decl., Ex. E at 77:5-7). Plaintiff was thereafter escorted to the infirmary. (56.1 Stmt. at 4 ¶ 6; *see also* Shevlin Decl., Ex. A ¶ 9; *id*., Ex. E at 81:10-20, 83:8-20).

Notably, Plaintiff admits that he never complained to medical personnel about a back injury on May 6, 2015, and concedes further that he has not sought treatment for any such injury in the intervening years. (56.1 Stmt. at 4 ¶¶ 7-8; *see also* Shevlin Decl., Ex. C ¶¶ 2-8; *id*., Ex. D ¶¶ 2-8;

---

[4] Plaintiff's alleged material facts aver that the partition was metal. (56.1 Stmt. at 7 ¶ 10). Plaintiff testified, however, that the divider was "made out of . . . a light plastic." (Shevlin Decl., Ex. E at 74:16-17).

*id*., Ex. E at 87:6-15, 89:14-90:7). Indeed, he testified affirmatively that he complained to medical personnel about only the cut on the date of the incident, he has neither sought nor received treatment for his back injury, he cannot recall whether he complained to his current physician about the back injury, he has not complained to medical personnel in his current facility about his back injury, his back injury has not impacted his relationships, and any pain he experiences is "not that bad." (Shevlin Decl., Ex. E at 87:6-15, 90:5-15, 105:18-106:15, 109:24-111:3). In fact, Plaintiff stated that he did not complain to medical personnel about his back injury on May 6, 2015 because he was "just uncomfortable" and "didn't want to make a fuss about it." (*Id*. at 90:2-4).

This litigation followed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore,

"where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City*

5

*of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

## ANALYSIS

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had] a sufficiently culpable state of mind.'" *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original)), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This objective component requires, in the abstract, "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The subjective component, on the other hand, requires a "showing that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019) (quoting *Harris*, 818 F.3d at 63).

Of course, in evaluating an excessive force claim, courts must also bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers,

violates a prisoner's constitutional rights," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted), and "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (internal quotation marks omitted). Still, "[w]hen prison officials maliciously and sadistically use force to cause harm, a plaintiff need not demonstrate significant injury because, in those circumstances, contemporary standards of decency always are violated. Thus, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se*." *Greenburger v. Roundtree*, No. 17-CV-03295, 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020) (internal citations and quotation marks omitted), *adopted by* 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); *see also Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak."); *White v. Marinelli*, No. 17-CV-01094, 2019 WL 1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("[P]hysical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment.").

The parties disagree about whether Defendant used force of any kind against Plaintiff. There is no dispute that answering that question goes to the very heart of an excessive force case. That such a factual disagreement exists, however, is not talismanic in adjudicating a summary judgment motion. In such a scenario, "the evidence of the non-moving party will be believed as true, all evidence will be construed in the light most favorable to the non-moving party, and all

doubts and reasonable inferences will be drawn in the non-moving party's favor." 12B Federal Practice and Procedure, Civil Rules, Quick Reference Guide 1038 (2022 ed.). In that type of situation—which is precisely what the Court encounters here—although the parties "give different versions of the facts, summary judgment is not precluded unless the differences are material to the outcome of the litigation." *Moss v. Ward*, 450 F. Supp. 591, 594 (W.D.N.Y. 1978). Following this guidance, the Court concludes that even if the events unfolded as Plaintiff testified, Defendant's motion must still be granted. *See Castro v. City of New York*, No. 16-CV-08147, 2020 WL 6782000, at *16 (S.D.N.Y. Nov. 18, 2020) ("Although the parties dispute exactly what happened . . . the Court finds that no reasonable juror could conclude that Plaintiff has established an excessive force claim . . . even viewing the evidence in the light most favorable to Plaintiff."); *see also Gutierrez v. New York*, No. 18-CV-03621, 2021 WL 681238, at *14 (E.D.N.Y. Feb. 22, 2021) (noting, in a Fourth Amendment excessive force context, that "[a]lthough excessive force is a fact-intensive issue, the Court finds that summary judgment is warranted . . . because, even accepting as true the most favorable version of Plaintiff's testimony, no reasonable jury could find that the officers' conduct was objectively unreasonable").

As Plaintiff recalls: (1) he tried to exit the bathroom; (2) Defendant told him to wait until they (presumably the sergeant outside the bathroom) were ready; (3) Defendant pushed him back into the bathroom; (4) he tried to exit the bathroom again; (5) Defendant pushed him a second time; and (6) he fell, striking his back on a divider between stalls. (*See* 56.1 Stmt. at 6-7 ¶¶ 9-10; *see also* Shevlin Decl., Ex. E at 68:4-19, 71:2-75:25). Nothing about Defendant's conduct, even in Plaintiff's version of the story, is "*repugnant* to the conscience of mankind" or rises to the dignity of an Eighth Amendment violation.

According to Plaintiff, Defendant shoved Plaintiff twice. As an introductory point, years of precedent counsel that such conduct does not satisfy the objective prong of an Eighth Amendment claim. *See, e.g.*, *George v. Cty. of Westchester*, No. 20-CV-01723, 2021 WL 4392485, at *9 (S.D.N.Y. Sept. 24, 2021) ("[C]omparable uses of force—where a corrections officer forcefully shoves or pushes an inmate—are insufficient to satisfy the objective prong of an excessive force claim."); *Armand v. Osborne*, No. 11-CV-04182, 2014 WL 723381, at *8 (E.D.N.Y. Feb. 24, 2014) ("'[A] *de minimis* use of force,' including 'push[es] or shove[s], even if it may later seem unnecessary in the peace of a judge's chambers,' does not typically violate a prisoner's constitutional rights." (quoting *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (alterations in original)); *Kornegay v. New York*, 677 F. Supp. 2d 653, 660 (W.D.N.Y. 2010) ("[T]his was nothing more than a push or shove, and it was certainly not of a sort repugnant to the conscience of mankind." (internal quotation marks omitted)); *Suarez v. Kremer*, No. 03-CV-00809, 2008 WL 4239214, at *6 (W.D.N.Y. Sept. 11, 2008) ("[E]ven if Erickson shoved Suarez as alleged by the plaintiff, the plaintiff has failed to set forth a claim of constitutional dimension."); *James v. Phillips*, No. 05-CV-01539, 2008 WL 1700125, at *5 (S.D.N.Y. Apr. 9, 2008) ("True, plaintiff need not show a significant injury but he must come forward with more than a *de minimis* use of force. In this case, there was nothing more than a shove of an inmate who was not then handcuffed."); *see also Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *6 (S.D.N.Y. Feb. 17, 2021) ("[T]hat Franco slammed the gate on Plaintiff and it bounced [off] his back are not sufficiently serious to satisfy the objective standard." (internal citations omitted)). In short, no

reasonable jury could conclude that the force used was so serious that it qualified as a violation of the Eighth Amendment. Defendant's motion is granted on this basis.[5]

The Court notes, however, that even if the shoves were not by their very nature *de minimis* and therefore not cognizable under the Eighth Amendment, two further considerations rally in support of granting summary judgment at this juncture.

First, the total lack of associated medical documentation along with Plaintiff's admission that he has never sought medical care for the injuries he allegedly sustained would—even if the shoves were not, by their very nature, *de minimis*—lead to the conclusion that the force used was, in fact, *de minimis*. *See Morocho v. New York City*, No. 13-CV-04585, 2015 WL 4619517, at *9 (S.D.N.Y. July 31, 2015) (granting summary judgment to defendants in an excessive force case where the plaintiff "sought no medical attention . . . and has submitted no medical records or photographs . . . ."); *Murray v. Goord*, 668 F. Supp. 2d 344, 361 (N.D.N.Y. 2009) ("While plaintiff may have suffered injury . . . the *de minimis* nature of this injury is demonstrated in that the record shows that after the initial examination plaintiff did not complain . . . nor did he seek any further medical treatment . . . ."); *Perry v. Stephens*, 659 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) (concluding that the evidence, which included a notation from medical providers that the plaintiff denied injury, revealed that the force used was *de minimis*); *cf. Santiago v. City of Yonkers*, No. 13-CV-01077, 2015 WL 6914799, at *8 (S.D.N.Y. Oct. 30, 2015) ("It is settled in this district that an open-handed slap on the back of the head, with no medical evidence and no other evidentiary support of injury, does not rise to the level of a constitutional violation." (internal quotation marks omitted)).

---

[5] This conclusion is underscored by the fact that this conduct is far less objectionable than other behavior found insufficient to satisfy the objective prong of an Eighth Amendment excessive force claim. *See, e.g.*, *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 341 (N.D.N.Y. 2010) (concluding that throwing "urine and feces" on plaintiff, "while certainly repulsive, is not sufficiently severe to be considered repugnant to the conscience of mankind" (internal quotation marks omitted)).

10

Second, in Plaintiff's version of events, Defendant shoved Plaintiff because Plaintiff refused to comply with an order to remain in the bathroom momentarily. (*See* Shevlin Decl., Ex. E at 71:18-73:16). Plaintiff's testimony was that Defendant said to him, "[W]ait until they finish." (*Id*. at 73:8). Shoving an uncooperative inmate twice to ensure compliance with a directive to wait is proportionate to a correction officer's legitimate penological interest of maintaining control. *See Murray*, 668 F. Supp. 2d at 361 ("It appears that the only force exerted by corrections officers occurred when plaintiff attempted to exit the cell as the door was being closed. Based upon the record now before the court, no reasonable factfinder would conclude that defendants exerted force that was not proportionate to the need to further legitimate penological interests . . . ." (internal citations omitted)); *see also Casiano v. Ashley*, 515 F. Supp. 3d 19, 26 (W.D.N.Y. 2021) (concluding that "it was objectively reasonable" to "use some force" to compel a pretrial detainee's compliance with commands); *Carmona v. City of New York*, No. 13-CV-03273, 2016 WL 4401179, at *3 (S.D.N.Y. Mar. 1, 2016) (granting defendant's motion for summary judgment on a Fourteenth Amendment excessive force claim and observing that "[o]bvious security concerns arise when a detainee suddenly walks away . . . with an unlocked handcuff and refuses to obey orders to return"). Such a proportionate use of force is not excessive under the Eighth Amendment.

Plaintiff cannot establish, as a matter of law, that the force used to keep him in the bathroom satisfies the objective prong of an Eighth Amendment excessive force claim. The Court, therefore, need not and does not address the parties' arguments with respect to the subjective prong or the existence of qualified immunity.

## CONCLUSION

In light of the foregoing, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 84 and close this case.

**SO ORDERED:**

Dated: White Plains, New York
June 1, 2022

_____
PHILIP M. HALPERN
United States District Judge